IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| EVERETT WAYNE SCRUGGS, | ) | Case No. 4:08CV00005 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| DANVILLE REGIONAL MEDICAL | ) | By: Jackson L. Kiser |
| CENTER OF VIRGINIA, L.L.C., | ) | Senior United States District Judge |
| | ) | |
| Defendant. | | |

Before me is Defendant's *Motion to Dismiss*. I heard oral argument on this motion on August 14, 2008, and it has been briefed by the parties and is now ripe for decision. For the reasons given below, I will **DENY** the *Motion to Dismiss*.

## I.	STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case arises out of an incident in the Danville Regional Medical Center ("DRMC") Emergency Department that occurred on September 3, 2006. Plaintiff arrived at the DRMC Emergency Department at 1:50 a.m. on September 3, 2006 complaining of prolonged dry heaves over the past two days. Upon arrival in the DRMC Emergency Department, Plaintiff was triaged by a registered nurse, Charlotte McCloskey, and prioritized as a "non-urgent" patient based upon her triage screening examination. (Pl.'s Compl. ¶¶ 3-4.) The nurse's triage report did not include Plaintiff's diabetic ketoacidosis condition or his history of diabetes. (Pl.'s Compl. ¶¶ 3-4.)

Plaintiff was examined by Ramon Gomez, M.D. at approximately 1:20 p.m. on September 3, 2006. Dr. Gomez' medical examination occurred approximately eleven and one-half hours after Plaintiff arrived at DRMC's Emergency Department. (Pl.'s Compl. ¶ 6.) Dr.

1

Gomez took a medical history and performed a medical examination.[1] Dr. Gomez made several orders, including intravenous fluids, oxygen, cardiac monitor labs, and a blood sugar test. (Pl.'s Compl. ¶ 6.) At approximately 2:00 p.m. a nurse found Plaintiff unresponsive and in cardiac and respiratory arrest. (Pl.'s Compl. ¶ 7.)[2]

Plaintiff filed his *Complaint* on February 12, 2008 alleging a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395(d)(d) (Count I) and medical negligence (Count II). (Pl.'s Compl. ¶¶ 10, 14.) Plaintiff alleges in his EMTALA claim that DRMC failed to provide an appropriate and prompt medical screening examination. (Pl.'s Compl. ¶ 10.) Plaintiff asserts that DRMC failed to provide an examination and appropriate treatment for approximately eleven and one-half hours after he presented himself to DRMC's Emergency Department. (Pl.'s Compl. ¶ 11.) Defendant has moved to dismiss Plaintiff's *Complaint* arguing that the *Complaint* fails to set forth facts sufficient to establish that DRMC failed to provide an appropriate medical screening examination as required under EMTALA. Plaintiff filed a Memorandum in Response to Defendant's Rule 12(b)(6) Motion asserting that triaging alone is not equivalent to an appropriate medical screening examination required under EMTALA. Defendant replied to Scruggs' brief by asserting that Plaintiff's claim is one for negligent triage and that EMTALA is not a substitute for state law medical negligence claims.

## II.   STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint

---

[1] It was determined that Mr. Scruggs had a history of diabetes and was tachycardic at the time of his examination. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss 2.)

[2] Plaintiff was resuscitated and his cardiac status was improved by approximately 2:15 p.m. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss 2.) It is worth noting that Plaintiff was treated at DRMC until September 18, 2006 and was never transferred to another facility. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss 2.)

2

some insuperable bar to relief." *Browning v. Vecellio & Grogan, Inc.*, 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level" or dismissal is appropriate. *Id.*

### III.     DISCUSSION

The EMTALA statute imposes two primary obligations on hospitals.  First, it requires that when an individual seeks medical treatment in a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition" exists.  *Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 142 (4th Cir. 1996); *see* 42 U.S.C. § 1395dd(a).  Second, if the screening examination reveals the presence of an emergency medical condition, the hospital ordinarily must stabilize the medical condition before transferring or discharging the patient.  *Vickers*, 78 F.3d at 142.  While EMTALA requires a hospital emergency department to apply its standard screening examination uniformly, it does not guarantee that the emergency personnel will correctly diagnose a patient's condition as a result of this screening. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879 (4th Cir. 1992).  The Fourth Circuit has repeatedly reaffirmed the scope of EMTALA such that "EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical

3

negligence. *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994); *see also Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 142 (4th Cir. 1996).

Because Defendant has moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6), the facts as alleged in the Complaint are taken to be true. The question before me is whether, after taking the facts in the Complaint to be true, Plaintiff makes out a claim under EMTALA. After surveying the relevant case law in this area, I must answer this question in the affirmative. Plaintiff asserts that the lack of any medical treatment for eleven and one-half hours subsequent to the time Plaintiff presented himself to DRMC's Emergency Department does not constitute an "appropriate" medical screening examination as required by EMTALA. Therefore, I will deny Defendant's *Motion to Dismiss*.

Plaintiff asserts that Defendant did not provide him with an appropriate medical screening examination as required under EMTALA.[3] The Complaint alleges that the Defendant did not provide an appropriate medical screening examination and/or treatment for approximately eleven and one-half hours after Plaintiff presented himself to the DRMC Emergency Department. (*See* Pl.'s Compl. ¶ 11.) Plaintiff further argues that a medical screening examination must include more than initial triage. (*See* Pl.'s Mem. in Resp. to Def.'s Mot. to Dismiss 3.) Plaintiff states in his Complaint that the triage nurse merely obtained a brief medical history as part of the triage process and failed to record Mr. Scruggs' documented diabetic history. (Pl.'s Compl. at ¶ 3-5.) After the initial triage was performed, Plaintiff alleges

---

[3] EMTALA states is relevant part:
  In the case of a hospital that has a hospital emergency department, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists.
42 U.S.C. § 1395dd(a).

4

that the DRMC ignored Plaintiff's repeated pleas for help for more than eleven hours. (Pl.'s Compl. at ¶ 5.)

The case law applying EMTALA to legal actions alleging the absence of a medical screening examination makes it clear that EMTALA requires hospitals to provide *some* medical screening. *See Baber*, 977 F.2d at 878 (emphasis added). The goal of an appropriate medical screening examination is to determine "whether a patient with acute or severe symptoms has a life threatening or serious medical condition." *Id.* at 879. The EMTALA statute requires a hospital to develop a medical screening procedure designed to identify such critical conditions that exist at the time a patient presents himself to the Emergency Department. *Id.* Additionally, the hospital must apply "that screening procedure uniformly to all patients with similar complaints." *Id.*

Although the Fourth Circuit stated in *Baber* that EMTALA is not substitute for state law medical malpractice actions, hospitals still must apply an "appropriate" medical screening examination within the capability of the hospital's emergency department. The *Baber* court opined that although the term "appropriate" is defined in terms of the individual hospital's medical screening standard based on its individual capabilities, "hospitals could theoretically avoid liability by providing very cursory and substandard screenings to all patients, which might enable to doctor to ignore an emergency medical condition." *Id.* at 880 n.7. Although unlikely that a hospital would endanger all of its patients by implementing such a cursory standard, the court deemed such a situation possible. The Fourth Circuit explicitly stated: "[o]ur holding, however, does not foreclose the possibility that a future court faced with such a situation may decide that the hospital's standard was so low that it amounted to *no* appropriate medical

5

screening."[4] *Id.* Whether the hospital's screening is "appropriate" is inherently a factual determination and is not a candidate for determination on a motion to dismiss.

Defendant points the Court to several cases to support its argument that the Plaintiff does not have a claim under EMTALA. In each of the cases cited by Defendant, the hospital provided a higher degree of medical screening at the time defendant presented himself to the hospital's emergency department compared to the case currently sitting before me. For example, the defendant hospital in *Baber* took a medical history, examined vital signs, and evaluated all bodily systems upon the plaintiff's presentation to the hospital's emergency department. *Baber*, 977 F.2d at 881. In addition, laboratory tests were performed during the initial medical screening. *Id.* Although the court did determine that the hospital's screening examination was not so substandard to amount to no examination, the court made such finding at the summary judgment stage, not under Rule 12(b)(6). *See id.* at 882.

Defendant also points to *Vickers v. Nash General Hospital, Inc.* for further support of its argument that Plaintiff has not made out a claim under EMTALA. In *Vickers*, the treating physician in the hospital's emergency department treated the plaintiff for what he perceived to be the plaintiff's medical condition. 78 F.3d 139, 144 (4th Cir. 1996). The defendant hospital treated the laceration on plaintiff's head with sutures, ordered x-rays of plaintiff's cervical spine, and kept him in the hospital for a period of eleven hours before releasing him. The *Vickers* court found that the hospital did screen the plaintiff adequately upon his arrival at the emergency room. *See id.* at 144-45. However, like *Baber*, the defendant hospital provided a substantial amount of treatment at the time the defendant presented himself to the hospital's emergency

---

[4] In *Baber*, the Fourth Circuit did not decide the question of whether the hospital's medical screening was "appropriate" because the medical screening was not so substandard as to amount to no screening at all. *See Baber*,

6

department.

The case at hand factually differs from the *Baber* and *Vickers* decisions in one major regard: Scruggs alleges that Defendant DRMC did not provide an "adequate" medical screening upon his arrival at DRMC's Emergency Department. After experiencing nausea and weakness for two days, Plaintiff presented himself to the DRMC Emergency Department and was triaged by a registered nurse. Plaintiff was classified as "non-urgent" and was told to wait in the waiting area until his name was called. No doubt, triage is a necessary part of emergency care utilized to determine the priority by which patients are examined. However, triage is not the equivalent to a medical screening examination and merely determines the order by which patients are seen in the emergency department. Defendant acknowledged as much at oral argument. Plaintiff clearly has outlined a claim within the realm of EMTALA by asserting he did not receive an "adequate" medical screening examination based on the eleven and one-half hour time period prior to receiving medical treatment. This is clearly more than a claim for negligent triage as proposed by Defendant at oral argument. Therefore, after taking the facts in the *Complaint* to be true, I find that Plaintiff does make out a claim under EMTALA to survive Defendant's *Motion to Dismiss*.

## IV. CONCLUSION

For the reasons stated above, I will **DENY** Defendant's *Motion to Dismiss*. An appropriate *Order* will be entered.

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying

---

977 F.2d at 880 n.7.

*Order* to all counsel of record.

      Entered this 5th day of September, 2008.

                                                    s/Jackson L. Kiser
                                                    Senior United States District Judge

8